FILED

2014 APR 28 P 2: 15

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NVR, Inc.<br>11700 Plaza America Dr.<br>Reston, VA 20190,<br><br>    Plaintiff,<br><br>v.<br><br>NGM INSURANCE COMPANY<br>4601 Touchton Rd. East<br>Suite 3400<br>Jacksonville, FL 32246<br><br>Serve: National Registered Agents, Inc.<br>        4701 Cox Road<br>        Suite 285<br>        Glen Allen, VA 23060<br><br>    Defendant. | Civ. Case No. 1:14-CV-00463<br>(JCC/TRJ) |

## COMPLAINT

Pursuant to F.R.C.P. 57 and 28 U.S.C. § 2201, Plaintiff, NVR, Inc., by and through its undersigned counsel, brings this Complaint for breach of contract and declaratory judgment against Defendant, NGM Insurance Company and in support thereof, alleges the following:

### PARTIES

1. Plaintiff, NVR, Inc. ("NVR") is a corporation duly organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 11700 Plaza America Dr., Reston, Virginia 20190 and is qualified to do business within the Commonwealth of Virginia. NVR

is in the business of, *inter alia*, operating home building units that sell and construct homes in 14 states, including Virginia and the District of Columbia.

2. Upon information and belief, Defendant, NGM Insurance Company ("NGM") is an insurance company organized under the laws of the State of Florida, with its principal place of business located at 4601 Touchton Rd. East, Suite 3400, Jacksonville, FL 32246 and is qualified to conduct business in the Commonwealth of Virginia. NGM is engaged in the business of, *inter alia*, providing general, commercial, business owners and contractors insurance.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint for Declaratory Judgment occurred within this judicial district.

## FACTS

5. On or about February 1, 2010, NVR, Inc. d/b/a Ryan Homes, NVHomes, and Fox Ridge Homes entered into the NVR Master Contractor Agreement ("Master Contractor Agreement") with WM Company, Inc. ("WM" or "Contractor"). Exhibit A, attached hereto.

6. The Master Contractor Agreement set forth "the terms and conditions under which Contractor agrees to provide materials and/or to perform services (the "Work") from time to time for NVR in connection with NVR's homebuilding operations." Exhibit A.

7.  The Master Contractor Agreement required WM to obtain and maintain certain minimum insurance coverages for the benefit of NVR:

> SECTION 7: INSURANCE
> At all times while performing the Work, and for a period of two (2) years thereafter, Contractor will maintain for the benefit of itself and NVR the following minimum insurance coverages:
>
> \*   \*   \*
>
> C.  Commercial General Liability Insurance with bodily injury and property damage limits set forth in Attachment A, and *with a contractual liability endorsement covering Contractor's obligations set forth in Sections 3 and 8[1] of this Agreement* in such amounts as NVR may from time to time request, but in no event less than those set forth in Attachment A...

Exhibit A (emphasis added).

8.  Pursuant Section 7 of the Master Contractor Agreement, WM was also required to:

> ... add NVR as an "Additional Insured" on the above Commercial General Liability and Commercial Automobile policies. All insurance policies will provide an endorsement for a waiver of subrogation in favor of NVR, Inc. Further, *all insurance policies will provide that Contractor's insurance policies will be considered primary despite any insurance policies in place by NVR*. Contractor also agrees to cause its subcontractors to maintain insurance coverages identical to those set forth in Sections 7(A), 7(B), 7(C) and 7(D), all of which shall name NVR as an additional insured, and if they do not have such coverages, Contractor recognizes and acknowledges that it shall bear exclusive liability for any claims arising by reason of the actions or failures to act of its subcontractors.

Exhibit A (emphasis added).

9.  Section 8 of the Master Contractor Agreement required WM to indemnify NVR against certain claims:

---

[1] Section 3 of the Master Agreement is entitled "Warranty and Service" and Section 8 is entitled "Waiver, Release, Indemnification and Termination." Exhibit A.

3

  C. Indemnification

To the full extent permitted by law, Contractor hereby agrees to save, indemnify and keep NVR harmless against all demands, claims, causes of actions, damages, liabilities, penalties, and expenses (including fees and disbursements of counsel) arising out of or resulting from Contractor's performance of (and/or failure to perform) this Agreement and/or the work described in this Agreement, and/or the materials, supplies or goods provided by Contractor, and for or on account of injury to or death of persons, including Contractor's employees, Contractor's Sub-Contractor's or their employees, or damage to or destruction of property, or any bond obtained for same, caused, in whole or in part, by any act or omission, or alleged act or omission, of Contractor, its employees, or agents, whether caused in part by NVR ("Claim").

Exhibit A.

10. Pursuant to the terms of the Master Contractor Agreement, WM caused its insurer, NGM Insurance Company, to add NVR, Inc. as an additional insured to WM's Contractor's Policy, Policy Number MP F20 23E, for the policy term of 10/25/10 to 10/25/11 ("Insurance Agreement"). Exhibit B, attached hereto.

11. NVR is an "insured" as defined by the Businessowners Liability Coverage Form of the Insurance Agreement. Exhibit B, BP 00 06 01 97, Section C.

12. Pursuant to the terms of the Master Contractor Agreement, NVR was added as an additional insured to the Insurance Agreement with the intent that the Insurance Agreement would be considered primary despite any insurance policies in place by NVR.

13. Under the Insurance Agreement, NVR is covered for claims of bodily injury or personal injury arising out of work performed on covered premises and NGM has the duty to defend NVR against any suit brought against NVR seeking damages arising from such claims. The Businessowners Liability Coverage Form provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages...

Exhibit B, BP 00 06 01 97, Section A.

14. Under the Insurance Agreement, NGM is also required to defend NVR as an indemnitee of WM in any suit where WM is also named and WM has assumed liability. The Businessowners Liability Coverage Form coverage extension states:

> If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:
>
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
> b. This insurance applies to such liability assumed by the insured;
> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
> d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
> e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee...

Exhibit B, BP 00 06 01 97, Section A(d).

15. NVR is an indemnitee of WM pursuant to the express terms of the Master Contractor Agreement.

16. The Master Contractor Agreement is an "insured contract" as defined by the Contractors Extension Endorsement of the Insurance Agreement. Exhibit B, 64-5481 (9/06), Section D(3)(8).

17. The Insurance Agreement contains a Contractual Liability provision that covers the obligations assumed by WM in the Master Agreement. The Businessowners Liability Coverage Form provides for the following contractual liability coverage:

**B.** **Exclusions**

    **1.** **Applicable to Business Liability Coverage**

    This insurance does not apply to:

        \*    \*    \*

    **b.** **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. *This exclusion does not apply to liability for damages*:

        \*    \*    \*

    (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement...

Exhibit B, BP 00 06 01 97, Section B (emphasis added).

18. "Insured contract" is defined in relevant part as:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.

6

Exhibit B, Contractors Extension Endorsement, 64-5481 (9/06), Section D(3)(8).

19. Under the Insurance Agreement, NGM is also required to defend NVR to the extent NVR has other insurance for direct physical loss or damage, Business Liability Coverage under the Insurance Agreement is considered excess, and no other insurer defends NVR. The Businessowners Common Policy Conditions states in relevant part:

**H. Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2. Business Liability Coverage is excess over any other insurance that insures for direct loss or damage.

3. When the insurance is excess, we will have no duty under the Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. *If no other insurer defends, we will undertake to do so*; but we will be entitled to the insured's rights against all those other insurers.

Exhibit B, BP 00 09 01 97, Section H (emphasis added).

20. On or about March 14, 2013, Alan Pereira Da Silva filed a Complaint against NVR, Inc., WM Company, Inc. and other defendants in the Superior Court of the State of Delaware in and for New Castle County for damages arising from personal injuries he sustained in a fall on or about March 18, 2011 while working on the construction of a residential home, the case being captioned as *Da Silva v. NVR, Inc., et al.*, Case No. N13C-03-091 EMD ("Complaint"). Exhibit C, attached hereto.

21. The Complaint alleges that Mr. Da Silva was an employee of RDR Contractors, Inc. Exhibit C, ¶10. Upon information and belief, RDR Contractors, Inc. was a subcontractor of WM at the Bay Forest at Bethany Beach project where Mr. Da Silva was working on March 18, 2011.

22. The Complaint alleges that NVR and/or other related entities were the general contractor on and/or developer and/or owner of the project. Exhibit C, ¶ 18.

23. The Complaint alleges that WM Company was a carpentry subcontractor for the project. Exhibit C, ¶ 19.

24. The Complaint alleges that Mr. Da Silva's fall and resulting injuries were proximately caused by the negligence of the defendants including NVR and WM. Exhibit C, ¶ 25.

25. The claims for damages arising from personal injury alleged in the Complaint are covered by the Master Contractor Agreement and the Insurance Agreement.

26. NGM is obligated to defend and indemnify NVR pursuant to the express terms of the Insurance Agreement because NVR is an additional insured under the Insurance Agreement.

27. NGM is further obligated to defend NVR pursuant to the express terms of the Insurance Agreement because NVR is an indemnitee of WM under the terms of the Master Agreement.

28. NGM is further obligated to defend and indemnify NVR pursuant to the express terms of the Insurance Agreement and the Contractual Liability Provision.

29. To the extent NVR has any other insurance that may cover the claims for damages asserted against NVR in the Complaint, coverage by the Insurance Agreement is primary pursuant to the express terms of the Master Agreement and the intent of the parties.

30. To the extent NVR has any other insurance that may cover the claims for damages asserted against NVR in the Complaint, no other insurer is defending NVR, and NGM is therefore further obligated to defend NVR pursuant to the express terms of the Insurance Agreement and the Businessowners Common Policy Conditions.

31. Pursuant to the terms of the Insurance Agreement, NVR demanded that NGM defend and indemnify NVR for all damages alleged in the Complaint.

32. On September 9, 2013, The Main Street America Group, on behalf of NGM, responded by denying NVR's request for a complete defense, but instead offered to share in the cost of the defense of NVR as an "indemnitee." Exhibit D, attached hereto. The Insurance Agreement does not contain any cost sharing provision, nor did The Main Street America Group correspondence identify any basis for its cost sharing proposal.

33. NGM also reserved its right to not indemnify NVR for any damages that do not arise out of WM's negligence.

34. NGM's denial of coverage to NVR was wrongful and contradicts the unambiguous terms of the Insurance Agreement.

## COUNT I
### (Breach of Contract)

35. NVR repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 34 as if each were fully set forth herein.

36. NVR and NGM were parties to the Insurance Agreement.

37. The Insurance Agreement was supported by adequate consideration.

38. The Insurance Agreement is a valid and binding contract between NVR and NGM.

39. NVR has fully performed all of its obligations under the Insurance Agreement.

40. NGM breached the provisions of the Insurance Agreement as set forth herein by failing to provide a complete defense to NVR against the claims set forth in the Complaint and by failing to agree to indemnify NVR against any judgment in favor of Mr. Da Silva against NVR up to the policy limits of the Insurance Agreement.

41. As a result of the breach of the Insurance Agreement by NGM, NVR has suffered and is entitled to compensatory damages from NGM for actual and direct economic loss sustained by NVR, as well as the recovery of court costs, interest and attorney's fees, in excess of $75,000.

## COUNT II
### (Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.*)

42. NVR repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 41 as if each were fully set forth herein.

43. For the reasons set forth above, an actual controversy exists between NVR and NGM.

44. The declaration of rights, duties and obligations of the parties herein under the Insurance Agreement is appropriate pursuant to 28 U.S.C. § 2201, *et seq.* and this Court has the authority to declare the rights of the parties under the law and under the Insurance Agreement.

45. All the conditions precedent for coverage contained within the Insurance Agreement have been satisfied.

46. NGM has no legitimate basis to deny NVR's claim for coverage, including a complete defense and indemnity, under the Insurance Agreement.

47. NVR is entitled to a declaration that NGM owes coverage under the Insurance Agreement, including a complete defense and indemnity up to the policy limits of the Insurance Agreement.

## **Prayer for Relief**

WHEREFORE, Plaintiff NVR, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant, NGM Insurance Company as follows:

1. Entry of an Order pursuant to 28 U.S.C. § 2201 declaring that:

    a) NGM is obligated under the terms of the Insurance Agreement to provide a complete defense to NVR against any and all claims asserted by the Complaint; and

    b) NGM is obligated under the terms of the Insurance Agreement to indemnify NVR against any judgment in favor of Mr. Da Silva against NVR up to the policy limits of the Insurance Agreement.

2. Entry of an Order in favor of NVR against NGM for breach of contract, granting judgment in favor of NVR against defendant NGM, and awarding damages for actual and direct economic loss sustained by NVR as a result of and proximately caused by NGM's breach in an amount, which the proof at trial will show to be, in excess of $75,000.00.

3. NVR be awarded its expenses, attorneys' fees and costs of this action pursuant to, *inter alia*, 28 U.S.C. § 2202.

4. For such other and further relief, including any appropriate equitable relief, as this Court deems just and proper.

DATED: April 28, 2014								Respectfully submitted,

_____
Edward J. Longosz, II
Virginia Bar Number: 39411
Nicholas T. Moraites
Virginia Bar Number: 73234
*Attorneys for NVR, Inc.*
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W.
12th Floor
Washington, DC 20006
T: (202) 659-6600
F: (202) 659-6699
elongosz@eckertseamans.com
nmoraites@eckertseamans.com